
FILED
2018 Mar-29  PM 01:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RODERICK HOLT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:17-cv-00683-JHE |
| | ) | |
| JEFFERSON COUNTY COMMITTEE FOR ECONOMIC OPPORTUNITY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant, Jefferson County Committee for Economic Opportunity ("JCCEO"), a nonprofit organization, and in support of its Motion for Summary Judgment submits this Brief, which includes a Statement of Undisputed Material Facts, supported by evidentiary materials that have been filed contemporaneously with this Brief, and an Argument section, with citations to supporting legal authorities.

## **TABLE OF CONTENTS**

Statement of the Case…………………………….......................................   1

Statement of the Facts…………………………….…..........................   1

Argument……………………………………………………………………   9

    I.    JCCEO is entitled to judgment in its favor as a matter of law, because there is insufficient evidence to support Holt's allegation of a willful FLSA violation.…………………………   9

    II.    JCCEO is entitled to judgment as a matter of law in its favor, because the evidence affirmatively establishes that JCCEO did not know or should have known that Holt allegedly worked overtime.…………………………….…………………………   13

    III.    Alternatively, JCCEO is entitled to judgment in its favor as a matter of law, for any alleged FLSA violation during Holt's tenure as Transportation Manager, because that position is exempt from FLSA coverage…………......................................................   14

Conclusion……………………………………………………………………...   16

## STATEMENT OF THE CASE

Plaintiff, Roderick Holt, (hereinafter "Holt") filed his Complaint in this action on April 27, 2017. (Doc. 1). In his Complaint, Holt asserts one Count. Specifically, Holt contends that JCCEO willfully violated the Fair Labor Standards Act (hereinafter "FLSA") by failing to keep accurate records showing all the time it permitted or required Holt to work, which resulted in the denial of compensation, either at a regular rate or an overtime premium rate for all time worked in excess of forty (40) hours in a workweek, as required by the FLSA.

## STATEMENT OF THE FACTS

1. JCCEO's mission is to reduce poverty and help low-income citizens of Jefferson County, Alabama. The agency provides five main services to the community: Children's Head Start, Home Weatherization, Adult Day Health Care, Energy Assistance, and Financial Literacy. (Clark Deposition, p. 70, l. 19 to p. 72, l. 6).

2. Holt was initially hired by JCCEO as a driver/janitor in 2009. (Holt Deposition, p. 20, l. 11-15).

3. In February of 2010, Holt was promoted to JCCEO's Transportation Supply Assistant Manager, an hourly position (Holt Deposition, p. 23, l. 2-5; Clark Deposition, p. 95, l. 3-16, Exhibits 8 & 9).

1

4. On January 21, 2016, Holt sent a letter to the Human Resources Department of JCCEO that stated his qualifications and desire for the open Transportation Manager position. (Holt Deposition, p. 66, l. 10-22, Exhibit 3).

5. The qualifications for the Transportation Manager position included the following:

| | |
|---|---|
| EDUCATION: | ==AA degree is some area related to business or transportation.==  Must have a valid Alabama driver's license, a CDL, experience in operating a motor vehicle, and an accident-free record for at least three years. |
| EXPERIENCE: | ==Five years supervisory and management experience related to some aspect of transportation and/or supplies.== |
| ABILITIES: | Ability to work cooperatively and collaboratively with other staff members and vendors.  ==Able to exercise discretion and sound judgment in the performance of duties.== |
| PERSONAL ATTRIBUTES: | Sound physical and mental health.  Must be able to relate positively and professionally to staff, participants, and vendors.  Must be willing to attend night meetings and/or meetings outside of regular working hours when necessary. |

(Singgellos Affidavit, paragraph 3, Exhibit A) (Emphasis added).

6. On May 12, 2016, Holt was presented with a written offer of promotion to Transportation Manager.  This document was prepared by then Interim JCCEO

HR Director, Randi Clark. The offer letter confirms that "this position is Exempt status at a salary of $28,500 annually." (Clark Deposition, p. 105, l. 5-17, Exhibit 7).

7. Clark met with Holt prior to his acceptance of the promotion, and she explained to Holt that the Transportation Manager was an exempt salaried position. (Clark Deposition, p. 104, l. 20 to p. 105, l. 4).

8. Clark also explained to Holt that the exempt salaried position of Transportation Manager was not eligible for overtime but rather "comp time," and that he would need to seek preapproval from his supervisor for any comp time he anticipated working.[1] (Clark Deposition, p. 106, l. 1-22).

9. Since Holt did not possess an Associate's Degree, which was one of the qualifications for the Transportation Manager position, Clark also explained to him that JCCEO would pay for the cost of his education, so that he could obtain an Associate's Degree, and upon completion of his obtaining an Associate's Degree, he would receive a substantial salary increase. (Clark Deposition, p. 41, l. 17 to p. 42, l. 12).

---

[1] JCCEO offers "comp time" to salaried/exempt employees. This benefit, which is not mandated by the FLSA or any other law, is a gratuitous act on the part of JCCEO. Specifically, if a salaried/exempt employee anticipates working more than 40 hours per week, the employee can request authority to work that time in exchange for "comp time." The accumulated "comp time" can then be used for paid time off in the future.
(Cark Deposition, pp. 85-87)

10. Holt did not express any lack of understanding or any disagreement with the terms of the proposed promotion. (Clark Deposition, p. 106, l. 1 to p. 107, l. 8).

11. Holt signed Clark's written offer of promotion the following day, May 13, 2016, signifying his acceptance of the terms. (Clark Deposition, p. 105, l. 11-20, Exhibit 7).

12. The job description for Transportation Manager states the following duties and responsibilities:

> RESPONSIBLE & ACCOUNTABLE TO:
> Superintendent of Facilities
>
> GENERAL DESCRIPITON:
> Responsible for providing supervision and guidance for the JCCEO transportation and supply departments. Responsible for the day-to-day operation of the JCCEO Transportation and Supply Department.
>
> SPECIFIC RESPONSIBILITIES:
> 1. Maintain familiarity with all JCCEO programs, services, policies, and procedures.
> 2. Maintain familiarity with and adhere to guidelines related to all Agency vehicles.
> 3. Provide supervision and guidance to the van and bus drivers.
> 4. Provide periodic workshops and training to all authorized drivers of Agency vehicles.
> 5. Coordinate and ensure maintenance of all required reports and records.
> 6. Manage the day-to-day operation of the JCCEO Transportation Department.
> 7. Drive Agency vehicles when necessary, including making deliveries and pick-ups as required.
> 8. Authorize vehicle repairs.

9. Meet weekly with drivers for a status report on vehicles.
10. Inspect Agency vehicles bi-weekly.
11. Coordinate transportation with other agencies.
12. Ensure that Agency vans are kept clean and in working order.
13. Install and use perpetual inventory computer software efficiently for central supply.
14. Develop and maintain computerized, perpetual inventory system for central supply unit to record receipt and issuance of supplies.
15. Operate central supply unit daily during specified hours, distributing supplies to staff and assuring that documentation requirements are met.
16. Coordinate with Warehouse Manager to assure availability and tracking of supplies.
17. Assure that all Headquarters break and maintenance supplies are provided to meet staff and visitor needs.
18. Maintain, stock, and maintain inventory on all vending machines at JCCEO Headquarters.
19. Generate computerized, monthly inventory reports to management.
20. Manage the physical receipt of goods delivered to the JCCEO central supply unit.
21. Attend workshops, training sessions, classes, and/or other educational sessions in order to attain additional job-related skills and knowledge and improve daily performance.
22. Adhere to JCCEO policies and procedures.
23. Treat everyone with dignity and respect.
24. Model appropriate, professional behavior at all times.
25. Perform other duties as assigned.

(Singgellos Affidavit, paragraph 4, Exhibit B).

13. The primary duty of the Transportation Manager is performance of office or non-manual work directly related to the management and general business operations of JCCEO. (Singgellos Affidavit, paragraph 5).

14. The Transportation Manager performs work directly related to assisting with the running and servicing of JCCEO's business. (Singgellos Affidavit, paragraph 6).

15. The Transportation Manager position includes, but is not limited to, work in functional areas such as quality control, purchasing, procurement, health and safety, personnel management, legal and regulatory compliance. (Singgellos Affidavit, paragraph 7).

16. The Transportation Manager's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. (Singgellos Affidavit, paragraph 8).

17. The Transportation Manager exercises discretion and independent judgment, which involves the comparison and evaluation of possible courses of conduct, and acting and making a decision after the various possibilities have been considered, on matters of significance to JCCEO's business. (Singgellos Affidavit, paragraph 9).

18. The Transportation Manager's discretion and independent judgment with respect to matters of significance includes, but is not limited to: having authority to formulate, affect, interpret and implement management policies or operating practices, carrying out major assignments and conducting the operations of JCCEO's business, performing work that effects JCCEO's business operations to

a substantial degree, having authority to commit JCCEO in matters that have significant financial impact, having authority to negotiate and bind JCCEO on significant matters, providing consultation and expert advice to upper management, planning long and short term business objectives, investigating and resolving matters of significance on behalf of management. (Singgellos Affidavit, paragraph 10).

19. The Transportation Manager's primary duty is management of JCCEO's Transportation Department. This is the principal, main major and most important duty that the Transportation Manager performs. The Transportation Manager spends well over 50% of his or her time performing this primary duty, and is relatively free from direct supervision in performing the primary duty. (Singgellos Affidavit, paragraph 11).

20. The Transportation Manager's management duties include, but are not limited to activities such as: interviewing for vacant positions in the Transportation Department, including Drivers, training of Transportation Department staff, including Drivers, directing the work of the Transportation Department employees, including Drivers, maintaining records pertaining to the operation of the Transportation Department which are used for supervision and control, evaluating Transportation Department employees productivity and efficiency for the purpose of recommending promotions or other changes in status, planning the work of the Transportation Department employees, including the Drivers, determining the

techniques to be used by the Transportation Department's staff, including the Drivers, apportioning work among the Transportation Department's employees, including the Drivers, determining the types of materials, supplies, machinery and equipment to be used or merchandise to be bought, stocked and sold, controlling the flow and distribution of materials, merchandise and supplies, providing for the safety and security of the Transportation Department's employees and JCCEO property, and monitoring or implementing legal and regulatory compliance. (Singgellos Affidavit, paragraph 12).

21. The Transportation Manager customarily and regularly directs the work of two or more other employees, including: the Drivers, the Assistant Transportation Manager and any other staff working in the Transportation Department. The Transportation Manager engages in this type of activity each workday. (Singgellos Affidavit, paragraph 13).

22. The Transportation Manager has the authority to make suggestions and recommendations with respect to hiring, firing, advancement, promotion or other changes of status of other employees in the Transportation Department, and the Transportation Manager's suggestions and recommendations are given particular weight. Such suggestions and recommendations occur frequently, and at least annually, as part of the performance review of each employee working in the Transportation Department. (Singgellos Affidavit, paragraph 14).

23. Holt completed his own timesheets, reflecting the hours that he claimed to work. He signed those timesheets and turned them into his supervisor for approval. It is undisputed that he was paid for all time that he reported working. (Holt Deposition, p. 103, l. 1 to p. 107, l. 3; 135, l. 9-23; Exhibit 6)

24. Representatives of JCCEO's upper management have been deposed in this case, and they have all verified that they were not aware of Holt allegedly working any overtime, for which he was not compensated. (Clark Deposition, p. 59, l. 19 to p. 60, l. 3; p. 75, l. 7-20; p. 111, l. 1-8; Woods Deposition p. 25, l. 20 to p. 27, l. 22; p. 122, l. 16 to p. 123, l. 6).

25. JCCEO does not prohibit hourly employees from working overtime. JCCEO has a policy, as stated in its Employee Manual, which requires employees to seek and receive approval from their immediate supervisor before working overtime. However, if an employee actually worked overtime, even without approval, JCCEO would pay the employee for that overtime. (Clark Deposition, p. 45, l. 13 to p. 47, l. 6).

## **ARGUMENT**

**I.   JCCEO is entitled to judgment in its favor as a matter of law, because there is insufficient evidence to support Holt's allegation of a willful FLSA violation.**

Holt's Complaint is based exclusively on JCCEO's alleged "willful" violation of provisions of the FLSA.

The Supreme Court held in McLaughlin v. Richland Shoe Co., 486 U.S. 128, 108 S. Ct. 1677, 100 L.Ed.2d 115 (1988), that a willful violation of the Act occurs when an employer either knows that his conduct is prohibited by or "show[s] reckless disregard for" the minimum wage laws, id. at 133, 108 S. Ct. at 1681.   See 29 C.F.R. §578.3(c)(1).

…

An employer acts with reckless disregard for the Act if the employer's conduct is more than "merely negligent," McLaughlin, 486 U.S. at 133, 108 S. Ct. 1681, and is blameworthy "if the employer should have inquired further into whether [his] conduct was in compliance with the Act, and failed to make adequate further inquiry," 29 C.F.R. § 578.3(c)(3); see 5 C.F.R. § 551.104.  In other words, an employer does not commit a willful violation if he "acts unreasonably, but not recklessly, in determining [his] legal obligation" under the Act. McLaughlin, 486 U.S. at 135 n. 13, 108 S. Ct. at 1682 n. 13.  The burden rests with the employee to "prove by a preponderance of the evidence" that her employer acted willfully.  Alvarez Perez v. Sanford-Orlando Kennel Club, Inc. 515 F.3d 1150, 1162-63 (11th Cir. 2008); see also Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1274 (11th Cir. 2008).

Davila v. Menendez, 717 F.3d 1179, 1184-1185 (11th Cir. 2013).

While the issue of whether an employer has willfully violated the Act is frequently a question of fact, summary judgment is appropriate where there is insufficient factual support for the allegation.

For example, in Souryavong v. Lackawanna County, 872 F.3d 122 (3rd Cir. 2017), the Third Circuit Court of Appeals affirmed the District Court granting an employer's motion for judgment as a matter of law on the issue of whether the employer willfully violated provisions of the FLSA, concluding that the employee had insufficient evidence to support the allegation, despite the fact that the employee sent an email on the subject to the employer 1 year before the employer corrected the FLSA violation. The Third Circuit noted that "a plaintiff must put forward at least some evidence of the employer's awareness of a violation of a FLSA overtime mandate." Further, the court noted that while the employer received the employee's email complaining about "wage and hour issues" and made reference to the employer's conduct giving "rise to the risk that an employee 'may file a grievance or back payer overtime,' " it was insufficient to suggest that the employer was aware of "an FLSA problem." The Third Circuit stated: "without something connecting the email to the FLSA, Pearson's (employee's) email is not enough on its own to create a jury question as to FLSA willfulness." See also Oakes v. Pennsylvania, 871 F.797, 801 (M.D. Pa. 1995) (finding no jury question on willfulness of meal-

break FLSA violation in spite of employees previously raising a similar meal-break issue, because the previous issue was raised only in the context of a collective bargaining agreement).

By contrast, the Eleventh Circuit reversed a District Court granting a motion for directed verdict on the issue of willfulness in <u>Davila v. Menendez</u>, 717 F.3d 1179 (11th Cir. 2013).  The type of evidence that it found necessary to reverse the District Court is instructive.  Specifically, the employee presented evidence that the employers were aware of and disregarded federal and state minimum wage laws, sometimes paid the employee in cash, failed to keep any record of the employee's hours of work, leveraged the employee's illegal immigration status to pay her less, and falsified their tax returns, failed to issue a W-2 to the employee and instructed the employee not to tell healthcare providers that she was employed by the employer in an effort to cover up their noncompliance with the law.

The disparity in the factual scenarios which the courts have deemed sufficient for an allegation of a willful violation to go to the jury is instructive.  In this case, there are no facts that even remotely approach the facts in <u>Davila v. Menendez</u>.  The undisputed facts establish that JCCEO had in place a policy for employees working overtime.  Employees were required to submit a request for overtime to their supervisor prior to working overtime and obtain the supervisor's approval.  However, even if an employee failed to obtain the required approval, the employee

would be paid for overtime, if the employee actually worked it. Employees were required to complete timesheets reporting the hours that they claimed to work each day, and in this case, it is undisputed that Holt completed and signed those timesheets. It is undisputed that he was paid for all time that he reported working. Although Holt's Complaint alleges that he worked 10 to 20 hours of overtime every week, he acknowledged in deposition that he was paid for all overtime he reported working on the timesheets he completed, signed and submitted. Based upon these undisputed facts, JCCEO is entitled to Judgment in its favor, as a matter of law.

**II.   JCCEO is entitled to judgment as a matter of law in its favor, because the evidence affirmatively establishes that JCCEO did not know or should have known that Holt allegedly worked overtime.**

An unpaid-overtime claim under the FLSA has two elements: (1) An employee worked unpaid overtime, and (2) The employer knew or should have known of the overtime work. Allen v. Bd. of Public Ed. for Bibb Cnty, 495 F.3d 1306, 1314-15 (11th Cir. 2007).

In this case, JCCEO's evidentiary submittal affirmatively establishes that Holt did not report any alleged overtime work, for which he was not compensated, and that JCCEO did not know of any such alleged overtime. There is no legitimate evidence to suggest that JCCEO should have known of the alleged overtime.

Accordingly, JCCEO is entitled to in its favor as a matter of law.

**III.   Alternatively, JCCEO is entitled to judgment in its favor as a matter of law, for any alleged FLSA violation during Holt's tenure as Transportation Manager, because that position is exempt from FLSA coverage.**

Whether an employee meets the criteria for an FLSA exemption, although based on the underlying facts, is ultimately a legal question.  See Evans v. McClain of GA, Inc., 131 F.3d 957, 965-66 (11th Cir. 1997) and Pioch v. IBEX Engineering Services, Inc., 825 F.3d 1264, 1268 (11th Cir. 2016).  The employer bears the burden of establishing that an employee is exempt, and exemptions are narrowly construed.  Evans v. McClain of GA, Inc., at 965.  Where the employer meets its burden, summary judgment is appropriate.  See e.g. Pioch v. IBEX Engineering Services, Inc., (affirming summary judgment in favor of employer on employee's FLSA claim on basis that employee's position was exempt).

29 U.S.C. § 213 (a)(1) exempts executive and administrative employees from the requirements of the FLSA.

In addition to meeting the salary requirements of 29 CFR 541.100, an executive employee is one:

> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

14

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 CFR §541.100

JCCEO's evidentiary submission clearly establishes that these requirements are met.

Alternatively, the Transportation Management position meets the criteria for an administrative employee exemption.

In addition to meeting the salary requirement, an exempt administrative employee is one:

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 U.S.C. § 541.200.

JCCEO's evidentiary submission clearly establishes that the Transportation Manager position alternatively satisfies the administrative employee exemption.

Thus, JCCEO is entitled to judgment as a matter of law on Holt's claim during his tenure as Transportation Manager.

## CONCLUSION

For the reasons stated herein above, JCCEO respectfully submits that it is entitled to Judgment in its favor, in whole, or alternatively in part, on the claims made the basis of Holt's Complaint.

><ins>/s/ C. Peter Bolvig</ins>
>C. Peter Bolvig (ASB-1853-G55C)
>Attorney for Defendant,
>Jefferson County Committee for
>Economic Opportunity

**OF COUNSEL:**

Whitaker, Mudd, Luke & Wells, LLC
2011 4th Avenue North
Birmingham, AL 35203
205-639-5300
pbolvig@wmslawfirm.com

## **CERTIFICATE OF SERVICE**

 I hereby certify that on this the 29th day of March, 2018, a copy of the foregoing was served on all counsel of record in this cause by on or more of the following in accordance with the <u>Federal Rules of Civil Procedure</u>:

| | |
|---|---|
| Jon C. Goldfarb | [X] AlaFile/CM-ECF electronic filing |
| L. William Smith | [ ] E-mail, delivery receipt requested |
| Wiggins, Childs, Pantazis, Fisher | [ ] U.S. Mail |
| & Goldfarb, LLC | [ ] Hand Delivery |
| The Kress Building | [ ] Facsimile |
| 301 19th Street North | |
| Birmingham, AL  35203 | |
| jgoldfarb@wigginschilds.com | |
| wsmith@wigginschilds.com | |

              */s/ C. Peter Bolvig*
              OF COUNSEL