FILED

2019 Mar-18  PM 01:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| RODERICK HOLT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.:  2:17-cv-00683-JHE |
| JEFFERSON COUNTY COMMITTEE FOR | ) | |
| ECONOMIC OPPORTUNITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Roderick Holt ("Holt" or "Plaintiff") brought this action on April 27, 2017, against

Defendant Jefferson County Committee for Economic Opportunity ("JCCEO" or "Defendant"),

alleging JCCEO violated the Fair Labor Standards Act ("FLSA") by failing to pay him overtime

compensation.  (Doc. 1).  JCCEO now moves for summary judgment.  (Doc. 17).  Holt opposes

the motion.  (Doc. 21).  JCCEO has filed a reply in support.  (Doc. 24).  JCCEO has also moved

to strike evidentiary material Holt has submitted with his response in opposition to the motion for

summary judgment, (doc. 25), which Holt opposes, (doc. 28).  Both motions are fully briefed and

ripe for review.  For the reasons stated more fully below, both motions are **DENIED.**

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil
Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge
conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 8).

## I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 447 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere

'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Evidentiary Objections

As noted above, JCCEO objects to evidence Holt relies on in opposition to its motion for summary judgment.  (Doc. 25).  In addition, it objects in its reply to "self-serving statements" by Holt describing his job duties.  (Doc. 24 at 6).  In his response, Holt raises an evidentiary objection to an affidavit submitted by JCCEO.  (*See* doc. 21 at 26-28).

With the December 1, 2010 rules change to Rule 56 of the Federal Rules of Civil Procedure, motions to strike submitted on summary judgment are no longer appropriate.  Revised Rule 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The Advisory Committee Notes specify as follows:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting.  The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.  There is no need to make a separate motion to strike.  If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

FED. R. CIV. P. 56, Adv. Comm. Notes, "Subdivision (c)" (2010 Amendments).  "Before this amendment, parties properly challenged evidence used in a summary judgment motion by filing a motion to strike.  The plain meaning of these provisions show that objecting to the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment

procedure, rather than a separate motion to be handled preliminarily." *Campbell v. Shinseki*, 546

F. App'x 874, 879 (11th Cir. 2013).[2]

### A. JCCEO's Motion to Strike (Doc. 25)

JCCEO specifically objects to three related exhibits to Holt's summary judgment response:

(1) sign in/sign out sheets filled out by Holt during his employment, (doc. 22-4); (2) a spreadsheet

summarizing those sheets, (doc. 22-5); and (3) the Declaration of Brooke Henderson and attached

chart quantifying the data from the sheets, (doc. 22-11).[3]  (Doc. 25 at ¶ 2).  JCCEO argues there is

no way to verify the accuracy of the sheets, pointing to Holt's deposition testimony indicating he

could not determine from the sheets how much of his time was spent working, as opposed to doing

other things.  (*Id.* at ¶ 3).  JCCEO states the sheets are not intended to be timekeeping records, do

not accurately reflect time actually worked, are unreliable on the issue of how much time Holt

actually worked, and are therefore irrelevant.  (*Id.* at ¶¶ 4-7).  In response, Holt contends the

evidence would be admissible at trial — the relevant inquiry — and should therefore be considered.

(Doc. 28).

Under Federal Rule of Evidence 401, "evidence is relevant if: (a) it has any tendency to

make a fact more or less probable than it would be without the evidence and (b) the fact is of

consequence in determining the action."  FED. R. EVID. 401.  Since the facts in this action revolve

around Holt's allegedly uncompensated overtime, the times Holt got to work and left work are

---

[2] JCCEO mistakenly argues Holt's evidentiary objection is procedurally defective because it was not presented in the form of a motion to strike, relying on a case that predates the 2010 amendment by twelve years.  *See* doc. 24 at 16 (citing *Givhan v. Electronic Engineers, Inc.*, 4 F. Supp. 2d 1331 (M.D. Ala. 1998)).

[3] JCCEO makes no arguments as to the admissibility of the latter two apart from the admissibility of the sheets, so the following discussion determines the admissibility of all three based on whether the sheets are admissible.

4

relevant.  Holt testified he signed in on the sheets at the beginning of the day and out at the end of

the day, not signing out for eating lunch or any other purpose in between.  (Doc. 20-2 at 29 (109:4-

112:12)).  Regardless of whether the sheets are a perfect record of the hours Holt spent actually

working, the sheets are probative of the hours Holt spent at work.  Additionally, under the law of

this circuit, in the absence of accurate time records from JCCEO,[4] Holt may provide evidence from

which a factfinder could infer the approximate hours he worked:

> [I]n situations where the employer's records cannot be trusted and the employee
> lacks documentation, the Supreme Court held "that an employee has carried out
> his burden if he proves that he has in fact performed work for which he was
> improperly compensated and if he produces sufficient evidence to show the
> amount and extent of that work as a matter of just and reasonable
> inference." [*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687
> (1946)].  The burden then becomes the employer's, and it must bring forth
> either evidence of the precise amount of work performed or evidence to negate
> the reasonableness of the inference to be drawn from the employee's
> evidence.  *Id.* at 687–88, 66 S. Ct. 1187.  "If the employer fails to produce such
> evidence, the court may then award damages to the employee, even though the
> result be only approximate." *Id.* at 688, 66 S. Ct. 1187.

*Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1315–16 (11th Cir. 2007).  Thus, the

sheets are relevant — and admissible — to the extent they provide a basis for the inference Holt

worked overtime.

　　To the extent JCCEO states the sheets are unreliable, whether the sheets are accurate or not

is an issue of weight, not admissibility.  *See Crompton-Richmond Co., Factors v. Briggs*, 560 F.2d

1195, 1202 n.12 (5th Cir. 1977) (an argument premised on the "inaccuracy and incompleteness"

---

[4] Although Holt filled out timesheets at JCCEO, he disputes the accuracy of those
timesheets, as discussed further below.

of records is an attack on weight, not admissibility).[5]  Questions of evidentiary weight are not resolved at summary judgment.  *Anderson*, 477 U.S. at 250.  JCCEO also emphasizes that the sign-in sheets are intended as a record of who was in the building for security purposes, but the original intent behind the sheets is simply another question of how accurate they are as a reflection of the time Holt actually worked.  Accordingly, JCCEO's objection is **OVERRULED**, and its motion to strike is **DENIED**.

### B. JCCEO's Objection to Holt's Description of Job Duties

In addition to its motion to strike, JCCEO "objects to portions of Holt's Statement of Facts to the extent that they include self-serving statements about what Holt claimed he was doing in the performance of his job," which it contends are irrelevant and immaterial.  (Doc. 24 at 6).  JCCEO does not support this objection with any authority, and in any event the court may not disregard testimony at summary judgment simply because it is self-serving.  *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (stating, with respect to self-serving statements by the plaintiff, "[a]s a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature.").  JCCEO's objection to Holt's description of his job duties is **OVERRULED**.

---

[5] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit.  *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

### C. Holt's Objection to Singgellos Affidavit

Holt contends JCCEO should be precluded from relying on the affidavit of Brenda Singgellos ("Singgellos"), (doc. 20-1) (the "Singgellos Affidavit"), JCCEO's current Human Resources Director, because it did not disclose her as a witness during discovery. (Doc. 21 at 26-28). Holt contends JCCEO's failure to disclose Singgellos deprived him of the opportunity to take her deposition. (*Id.* at 27-28). JCCEO responds that Singgellos was not included in its initial disclosures because she had not been hired at the time, and once she became employed by JCCEO she executed the answers to Holt's interrogatories on behalf of JCCEO. (Doc. 24 at 3-4). Consequently, it states Holt cannot have been surprised by Singgellos's affidavit, nor did he lack an opportunity to depose her. (*Id.* at 15).

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]" That duty does not end after initial disclosures have been served, because each party is required to supplement its initial disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" FED. R. CIV. P. 26(e). A party who "fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c). The non-disclosing party bears the burden of establishing the justification for or

7

harmlessness of its failure to disclose.  *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (citing *Leathers v. Pfizer, Inc.,* 233 F.R.D. 687, 697 (N.D. Ga. 2006)).

Since Singgellos was not employed by JCCEO at the time of its initial disclosures, whether JCCEO may rely on her affidavit turns on whether it shirked its duty to supplement its initial disclosures under Rule 26(e).  JCCEO's discovery responses, signed by Singgellos as "Human Resources Director of Jefferson County Committee for Economic Opportunity" and accompanied by a certificate of service dated October 16, 2017, (doc. 22-6 at 15-16), resolve this issue. Singgellos was not a surprise witness.  Holt was on notice from the date of JCCEO's discovery responses that Singgellos likely possessed information about the information included in those responses, including the duties of its employees (the substance of Singgellos's affidavit, as discussed further below).  *See Chadwick v. Bank of Am., N.A.*, 616 F. App'x 944, 948 (11th Cir. 2015) (no error when district court considered affidavit of defense witness not explicitly disclosed during discovery when witness verified responses to defendant's interrogatories).   Further, discovery closed in this matter on February 15, 2018, four months after the date of service of the discovery responses.  (Doc. 12).  Holt had ample time to depose Singgellos if he had wanted to do so. [6]   Consequently, Holt's objection is **OVERRULED**, and the undersigned will consider Singgellos's affidavit.

---

[6] Holt also requested, and was granted, permission to depose witnesses after the discovery deadline.  (Docs. 13 & 14).

### III. Summary Judgment Facts[7]

JCCEO is an organization that provides five main services in Jefferson County, Alabama: children's Head Start, home weatherization, adult day care, energy assistance, and financial literacy.  (Doc. 20-3 at 19 (70:1-72:6)).

#### A. Holt's Early Work at JCCEO

Holt was initially hired by JCCEO in 2009 as a driver/janitor.  (Doc. 20-2 at 6 (20:11-21)).  In that role, Holt was responsible for the janitorial issues at the JCCEO headquarters building and drove a school bus, transporting children to and from JCCEO headquarters.  (*Id.* at 6-7 (20:16-21:13)).  As a driver/janitor, Holt was paid $8.00 per hour.  (*Id.* at 7 (22:22-23:1)).

In February 2010, Holt was promoted to Assistant Transportation Manager, also an hourly position.  (*Id.* (23:2-5); doc. 20-3 at 24 (95:3-16)).  Holt remained in that position for approximately three years.  (Doc. 20-1 at 9 (31:3-6)).  As Assistant Transportation Manager, Holt reported to the Transportation Manager.  (*Id.* at 14 (49:8-12); doc. 20-4 at 11 (38:13-39:6)).  For approximately the last year of Holt's time as Assistant Transportation Manager, Holt reported to Transportation Manager Ellis Fowler, who had taken the position on a temporary basis following the previous Transportation Manager's demotion.  (Doc. 20-2 at 10-11 (36:2-37:13); doc. 20-4 at 11 (38:13-39:6)).  Holt's duties as Assistant Transportation Manager required him to drive a school bus or van almost every day, covering other drivers who had called in sick or could not come in to work. (Doc. 20-2 at 9 (31:7-32:11)).

---

[7] The following facts are undisputed or, if disputed, taken in the light most favorable to Holt.

### B. Holt's Promotion to Transportation Manager

On January 21, 2016, after JCCEO posted the Transportation Manager position to be filled on a permanent basis, Holt sent a letter to JCCEO's Human Resources Department stating his qualifications and interest in the position.  (Doc. 20-2 at 18 (66:10-22), 61).

On May 12, 2016, Holt was offered the Transportation Manager position.  (Doc. 20-2 at 56-57).  JCCEO's offer letter states "this position is Exempt status at a salary of $28,500 annually," (*id.* at 56).  At the time of the offer, Randi Clark ("Clark"), who was Human Resources Director for JCCEO from August 2014 to October 1, 2017 (and who had prepared the offer letter), met with Holt and explained that the position was salaried and exempt.  (Doc. 20-3 at 27-28 (104:20-105:4)).  However, Holt testified he was quoted an hourly rate of $13.81 for the position, (*id.* at 12 (43:11-22), 13 (47:3-48:8)).  Clark also explained to Holt that the position was not eligible for overtime, but that he could accrue "comp time,"[8] which would require preapproval from his supervisor.  (*Id.* at 28 (106:1-22)).  Holt signed the offer letter, acknowledging that the employment offer was contingent on a background check, drug test, and completion of an I-9 form.  (Doc. 20-2 at 57).

JCCEO's written job qualifications for Transportation Manager are:

| | |
|---|---|
| EDUCATION: | AA degree in some area related to business or transportation.  Must have a valid Alabama driver's license, a CDL, experience in operating a motor vehicle, and an accident-free record for at least three years. |
| EXPERIENCE: | Five years supervisory and management experience related to some aspect of transportation and/or supplies. |

---

[8] JCCEO characterizes comp time as a gratuitous benefit not mandated by the FLSA or any other statute — in Clark's words, a "perk."  (Doc. 19 at 5 n.1; doc. 20-3 at 23 (85:8-87:3)).  A JCCEO employee accrues comp time when he works more than 40 hours per week; the employee may then convert his accumulated comp time to paid time off at an hour-for-hour rate.  (*Id.*).

| ABILITIES: | Ability to work cooperatively and collaboratively with other staff members and vendors.  Able to exercise discretion and sound judgment in the performance of duties. |
|---|---|
| PERSONAL ATTRIBUTES: | Sound physical and mental health.  Must be able to relate positively and professionally to staff, participants, and vendors.  Must be willing to attend night meetings and/or meetings outside of regular working hours when necessary. |

(Doc. 20-1 at 5).  Since Holt lacked an associate's degree, Clark told him that JCCEO would pay

for the cost of his education; following the completion of his associate's degree, Holt would receive

a substantial salary increase.  (Doc. 20-3 at 12 (41:17-42:12)).

### C. Holt's Working Hours as Transportation Manager

As Transportation Manager, Holt filled out timesheets on a biweekly basis.  (Doc. 20-2 at

27 (103:1-11)).  When he had been Assistant Transportation Manager, Holt had made several

claims for overtime by reporting additional hours on his timesheet and had been paid for those

claims.  (*Id.* at 35 (134:16-135:23)).  Holt was subsequently told that he could not ask to be paid

for overtime that had not been pre-approved and should not record unapproved overtime on his

timesheet.  (*Id.* 35-36 (136:1-138:9)).  Nevertheless, Holt continued to work overtime without pre-

approval — for example, when driving a route and the work ran long — and did not submit claims

for overtime because he had not received pre-approval.  (*Id.* at 35 (136:7- 17)).  Holt generally

indicated on his Transportation Manager timesheets that he worked eight hours per day, unless he

had worked fewer hours.  (*Id.* at 28 (106:10-107:21)).  However, Holt testified he normally worked

"maybe nine, ten" hours per day.  (*Id.* at 28-29 (108:21-109:3)).  In addition to his timesheet, Holt

kept a log of when he arrived at work and when he left work on sign-in sheets, although these

would not necessarily account for when Holt left the building between the sign-in and sign-out times.  (Doc. 20-2 at 29 (109:4-112:12)).

As Transportation Manager, Holt reported to John Woods ("Woods"), JCCEO's Director of Transportation.  (Doc. 20-4 at 5 (14:3-11), 7 (22:2-13)).  Woods, also a salaried employee, would also only put eight hours on his timesheet no matter how many additional hours he worked.  (Doc. 20-4 at 14-15 (52:5-54:5)).  Woods explained that he had been trained to do this by his former supervisor.  (*Id.* at 15 (54:6-55:10)).  Woods testified he believed Holt arrived to work every day at around 6:00 or 6:30 a.m. and would work until 3:00 or 3:30 p.m.  (*Id.* at 8 (28:7-15)).

The JCCEO employee handbook states: "[n]on-exempt employees will be paid overtime at one and one-half times the regular rate for all hours worked in excess of their normal paid hours . . . within a regular work week.  Prior written approval by the supervisor and Division Director must be obtained, as well as verification from the accounting department that funds are available before the over-time is worked."  (Doc. 22-3 at 2).  Woods was not sure of the process an employee would use to receive overtime pay if the employee had worked more than forty hours per week but had not obtained prior approval.  (Doc. 20-4 at 31-32 (120:22-121:15)).  Clark testified employees would be paid for unapproved overtime, but it would be up to managers to inform employees they needed approval prior to working more than forty hours per week.  (Doc. 20-3 at 3 (8:11-16), 13 (45:13-47:6)).  Frank Wright ("Wright"), who oversaw JCCEO's Human Resources Department from March 2017 until the end of May 2017, testified workers would be paid for approved overtime; he did not know whether unapproved overtime would be paid, but "[t]hat never happened while I was there."  (Doc. 22-2 at 4 (9:10-17), 7 (21:12-15)).

### D. Holt's Duties as Transportation Manager

The Transportation Manager job description consists of the following:

RESPONSIBLE & ACCOUNTABLE TO: Superintendent of Facilities and Transportation

GENERAL DESCRIPTION: Responsible for providing supervision and guidance for the JCCEO transportation and supply departments.  Responsible for the day-to-day operation of the JCCEO Transportation and Supply Department.

SPECIFIC RESPONSIBILITIES:

1.  Maintain familiarity with all JCCEO programs, services, policies, and procedures.
2.  Maintain familiarity with and adhere to guidelines related to all Agency vehicles.
3.  Provide supervision and guidance to the van and bus drivers.
4.  Provide periodic workshops and training to all authorized drivers of Agency vehicles.
5.  Coordinate and ensure maintenance of all required reports and records.
6.  Manage the day-to-day operation of the JCCEO Transportation Department.
7.  Drive Agency vehicles when necessary, including making deliveries and pick-ups as required.
8.  Authorize vehicle repairs.
9.  Meet weekly with drivers for a status report on vehicles.
10. Inspect Agency vehicles bi-weekly.
11. Coordinate transportation with other agencies.
12. Ensure that Agency vans are kept clean and in working order.
13. Install and use perpetual inventory computer software efficiently for central supply.
14. Develop and maintain computerized, perpetual inventory system for central supply unit to record receipt and issuance of supplies.
15. Operate central supply unit daily during specified hours, distributing supplies to staff and assuring that documentation requirements are met.
16. Coordinate with Warehouse Manager to assure availability and tracking of supplies.
17. Assure that all Headquarters break and maintenance supplies are provided to meet staff and visitor needs.
18. Maintain, stock, and maintain inventory on all vending machines at JCCEO Headquarters.
19. Generate computerized, monthly inventory reports to management.
20. Manage the physical receipt of goods delivered to the JCCEO central supply unit.
21. Attend workshops, training sessions, classes, and/or other educational sessions in order to attain additional job-related skills and knowledge and improve daily performance.
22. Adhere to JCCEO policies and procedures.
23. Treat everyone with dignity and respect.

13

24. Model appropriate, professional behavior at all times.
25. Perform other duties as assigned.

(Doc. 20-1 at 6-7). Additionally, the Singgellos Affidavit lists a number of responsibilities and characteristics of the Transportation Manager position. (Doc. 20-1). Notwithstanding this, Holt testified his duties did not change when he transitioned from Assistant Transportation Manager to Transportation Manager. (Doc. 20-2 at 39 (149:2-6)). Holt did not have an Assistant Transportation Manager during his time as Transportation Manager. (Doc. 21-1 at ¶ 7).

JCCEO employed four to five van drivers and seven or eight bus drivers. (Doc. 20-2 at 14 (51:20-23)). Drivers split their duties between driving and janitorial work; drivers would drive their routes at the beginning and the end of the day but would do janitorial work in between. (Doc. 20-2 at 22 (83:23-84:17); doc. 20-3 at 7 (21:1-6)). Each driver was assigned to a specific center, and the driver would report directly to their center manager (who was responsible for evaluating the drivers) while performing janitorial work.[9] (Doc. 20-2 at 14 (52:5-21); doc. 20-3 at 6-7 (20:20-21:13); doc. 20-4 at 4 (12:10-22)). Woods testified that drivers assigned to centers would report to the transportation manager while on the road driving vehicles. (Doc. 20-4 at 23 (85:6-16)). However, Holt did not supervise or guide the drivers, as stated in paragraph three of the job description and in the Singgellos Affidavit, (*see* doc. 20-1 at 4); instead, his role was limited to making sure routes were covered and vehicles were drivable, including issuing oil and other supplies to drivers as needed. (Doc. 20-2 at 18 (68:2-14), 22-23 (84:18-85:1)). The drivers did not check in with Holt and would come and go on their own unless they needed something from

---

[9] Clark testified the evaluations were "supposed to be in conjunction" with the Transportation Manager, although she did not know whether Holt himself had ever been involved in evaluations. (Doc. 20-3 at 7 (21:21-22:8)). Holt himself testified he was "not at all" involved in any driver reviews. (Doc. 20-2 at 18-19 (68:19-69:6)).

him.  (*Id.* at 22-23 (84:18-85:12)).  Only one driver (a "floater") was assigned to headquarters and reported directly to Holt.  (Doc. 20-2 at 23 (87:10-20); doc. 20-4 at 7 (21:5-17)).  Wright testified Holt did not have two direct reports.  (Doc. 22-2 at 11 (43:17-18)).

If a driver called in sick, Holt would try to find a replacement driver; otherwise, he would have to drive the route for the absent driver.  (Doc. 20-2 at 12 (41:1-8), 15 (53:12-55:15)).  This happened almost every day; a minimum of three days per week.  (*Id.* at 21 (79:18-80:20); doc. 22-1 at ¶ 3).  Although Holt attempted to find replacement drivers, he had no power to require a driver to come in and cover a shift if the driver did not want to work.  (Doc. 22-1 at ¶ 11).

In addition to driving, Holt's duties included performing work on the vehicles, such as changing light bulbs, fuses, and wiper blades, checking transmission fluid and oil levels, vehicle inspections, and checking tire wear.  (Doc. 20-2 at 12 (41:11-16); doc. 20-4 at 21-22 (79:21-80:2), 25 (95:22-96:11)).  Maintenance staff could also perform these duties, but Holt did not generally take advantage of them because he wanted to do the job himself.  (Doc. 20-4 at 24 (89:1-90:18)).

Holt also went to Sam's Club to purchase items for the vending machines or issuing office supplies, kept the vending machines stocked, went to other locations to get documents signed or deliver documents, and picked up food from vendors.  (Doc. 20-2 at 12 (42:3-14)).  These were not activities Holt would ask drivers to do.  (*Id.* at 23 (87:21-88:22)).  Holt was responsible for getting the money out of the vending machine, counting the money, rolling the coins, and taking the money to the bank to get dollars.  (*Id.* at 25-26 (96:21-97:7, 100:17-19)).  The money was kept onsite and was used either to buy additional vending machine supplies or to pay for DMV reports on new drivers.  (*Id.* at 26-27 (99:13-101:20)).

In her affidavit, Singgellos states the Transportation Manager has the authority to make suggestions and recommendations as to hiring and firing.  (Doc. 20-1).  However, Holt did not

have the power to hire or fire employees by himself (although no one else at JCCEO had the authority to fire anyone by themselves, either).  (Doc. 20-3 at 7-8 (24:22-25:12; doc. 22-2 at 12 (43:8-18)).  Holt testified he was not involved in interviewing applicants as Transportation Manager.[10]  (Doc. 20-2 at 19 (71:6-10)).

Clark testified Holt (like any other JCCEO employee) had "[n]ot a lot" of ability to exercise discretion and independent judgment; everything had to go through a collaborative process that began by bringing an issue to leadership.  (Doc. 20-3 at 12-13 (44:3-45:12)).  Asked about Holt's discretionary functions, Wright could only point to "deciding . . . whether every vehicle . . . that went on the road carrying children, other employees, staff people, whatever the case was, was absolutely up to date on all the maintenance, all safety, all required items, all of those sorts of things."  (Doc. 22-2 at 12 (41:4-44:23)).

The Finance Department — not Holt — set the budget for the transportation department, although Holt could go to his supervisor (Woods) for additional expenditures he needed to make; Woods would then go to the Head Start director to see if there were funds in the budget for the expenditure.  (Doc. 20-4 at 11-12 (39:23-40:41:3)).  If a bus had a mechanical problem, Holt would take a new bus to the site of the breakdown and ensure the malfunctioning bus was towed to the shop or repaired.  (Doc. 20-2 at 15-16 (57:16-59:7)).  Holt would decide where to send the vehicle, but JCCEO had specific vendors it used for specific repairs.  (*Id.* at 19-20 (72:20-73:20)).  Holt could authorize small repairs, but he would generally have to get approval from his supervisor for repairs over about $500, and certainly above $1,000.  (*Id.* at 16-17 (60:20-61:16), 18 (65:13-66:2)).

---

[10] Clark testified that Holt was involved in conducting interviews, but could not identify an instance in which he participated in an interview.  (Doc. 20-3 at 8 (25:17-23)).

16

## IV. Analysis

Holt's complaint alleges, in a single count, that JCCEO failed to pay him overtime in violation of the FLSA, despite the fact that he worked in excess of forty hours per week, and misclassified him as an exempt employee.  (Doc. 1 at ¶¶ 18-21).  JCCEO argues it is entitled to judgment as a matter of law because (1) Holt cannot show a willful violation of the FLSA, as he alleges in his complaint, (doc. 19 at 11-15); (2) no evidence supports JCCEO knew of any FLSA violations (*id.* at 15); and (3) Holt was properly classified as an exempt employee, (*id.* at 16-18). (Doc. 19).  Because the exemption issue is potentially dispositive, and because the first issue is informed to some extent by the second, the undersigned addresses these in reverse order.

### A. FLSA Exemptions

The FLSA exempts several categories of employees from FLSA coverage.  *See* 29 U.S.C. § 213.  "Whether an employee meets the criteria for an FLSA exemption, although based on the underlying facts, is ultimately a legal question."  *Pioch v. IBEX Eng'g Servs., Inc.*, 825 F.3d 1264, 1268 (11th Cir. 2016).  The employer bears the burden of demonstrating that an exemption applies, and exemptions are construed narrowly against the employer.  *Id.*  While position descriptions and titles are relevant, they are not determinative; whether an employee is exempt or nonexempt depends on the duties actually performed by the employee, and the regulations require an examination of those specific duties.  *See Wagner v. Murphy Oil USA, Inc.*, 139 F. App'x 131, 132 (11th Cir. 2005); 5 C.F.R. § 551.202.  "[E]xtend[ing] an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people."  *Id.* (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

17

JCCEO claims Holt is exempt under the FLSA's executive exemption and the administrative exemption. (*Id.* at 16-18). Preliminarily, JCCEO's argument the two exemptions apply is to recite the regulatory requirements and then state, without elaboration, that its "evidentiary submission" shows the requirements are satisfied. (Doc. 19 at 16-18). These bald pronouncements, which JCCEO expands upon only in its reply brief (though still failing to cite to any particular evidence within the whole of its "factual submission," (*see* doc. 24 at 13)), fall short of discharging JCCEO's burden to show that an exemption applies. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("arguments raised for the first time in a reply brief are not properly before a reviewing court."). Alternatively to JCCEO's failure to meet its burden, though, it is not entitled to summary judgment on either exemption, as discussed below.

**1. Executive Exemption**

Although the FLSA generally requires that an employee receive overtime pay if he or she works more than forty hours per week, it exempts "any employee employed in a bona fide executive . . . capacity." 29 U.S.C. §§ 207(a)(1), 213(a)(1). Under the relevant regulations, an exempt executive employee is one:

> (1) Compensated on a salary basis pursuant to § 541.600 [. . .];
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100. "Summary judgment based on the executive exemption is appropriate only where the four prongs of the 'executive exemption' test are met as a matter of law." *Barreto v.*

18

*Davie Marketplace, LLC*, 331 F. App'x 672, 678 (11th Cir. 2009).   The first element of the executive exemption is not in dispute, but Holt contests JCCEO has met its burden to demonstrate each of the three remaining elements.  (Doc. 21 at 25-26).

First, Holt states JCCEO cannot establish his primary duty was management.  (Doc. 21 at 25).  JCCEO's attempt to do this is, apparently, the Singgellos Affidavit, in which Singgellos states: "The Transportation Manager's primary duty is management of JCCEO's Transportation Department.   This is the principal, main major [sic] and most important duty that the Transportation Manager performs.   The Transportation Manager spends well over 50% of his or her time performing this primary duty, and is relatively free from direct supervision in performing the primary duty."   (Doc. 20-1 at ¶ 11).   Singgellos goes on to list a variety of these duties: interviewing for vacant positions; training staff; directing the work of Transportation Department employees; evaluating the work of Transportation Department employees; maintaining records related to the operation of the Transportation Department; planning the work of Transportation Department employees; determining the techniques used by Transportation Department employees; apportioning work among the Transportation Department employees; determining the type of materials, supplies, machinery and equipment to be used or merchandise to be bought, stocked, and sold; controlling the flow and distribution of materials, merchandise and supplies; providing for the safety and security of the Transportation Department's employees; and monitoring or implementing legal compliance.  (*Id.* at ¶ 12).   The problem for JCCEO is that these are nearly word-for-word recitations of the regulations explaining an employee's primary duty, (*compare* doc. 20-1 at ¶ 11 *with* 29 C.F.R. § 541.700), and defining "management," (*compare* doc. 20-1 at ¶ 12 with 29 C.F.R. § 541.102).   These are simply legal conclusions, not facts supporting

summary judgment, and they are inadequate to establish Holt's primary duty was management.[11] *See Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264 (11th Cir. 2008) ("When it comes to deciding whether an employee is an executive within the meaning of the FLSA, the answer is in the details."). Additionally, the claims in the Singgellos Affidavit about the work the Transportation Manager performed as a general matter is not dispositive of the real question: the work Holt actually performed, *see Wagner*, 139 F. App'x at 132.[12] Even assuming these could reasonably be considered factual descriptions of Holt's responsibilities as his job was actually performed, though, there are factual disputes, at a minimum, as to whether Holt spent more than fifty percent of his time engaged in management responsibilities (as opposed to driving or stocking vending machines) and whether he was actually responsible for such duties as interviewing.

Holt states it is undisputed that he did not "customarily and regularly direct[] the work of two or more other employees." (*Id.* at 25). In its reply, JCCEO states (without citing any specific evidence) Holt was responsible for supervising the drivers and shared that supervisory responsibility with the Center Managers. (Doc. 24 at 13). As JCCEO notes, shared supervisory responsibility can suffice for directing work. *See* 29 C.F.R. § 541.104(b). However, the evidence conflicts as to whether Holt actually exercised any degree of supervision over drivers other than

---

[11] JCCEO relies on *Bosch v. Title Max, Inc.*, 2005 WL 357411, at *6 (N.D. Ala. Feb. 7, 2005) to support that the test for exemption is "the primary value the employer places on the employee's duties." (Doc. 24 at 4, 16). This is not actually the test, and in any event an affidavit copying and pasting regulatory criteria does not support, as a factual matter, what an employee's duties actually are.

[12] Some of the claims in the Singgellos Affidavit clearly do not line up with Holt's time as Transportation Manager at all. For example, Singgellos claims "[t]he Transportation Manager customarily and regularly directs the work of . . . the Assistant Transportation Manager," (doc. 20-1 at ¶ 13), but the undisputed evidence is that Holt did not have an Assistant Transportation Manager working under him, (*see* doc. 21-1 at ¶ 7).

the "floater" who reported directly to him, (doc. 20-2 at 23 (87:10-20); doc. 20-4 at 7 (21:5-17)).

Although Singgellos states, as a general matter, the Transportation Manager was responsible for

directing two or more other employees including drivers, (doc. 20-1 at ¶ 4), Holt testified the

drivers did not check in with him and would only approach him when they needed something from

him, in which case he would issue the needed supplies.  (Doc. 20-2 at 18 (68:2-14), 22-23 (84:18-

85:12)).  Further, Holt did not have the power to require a driver to come in if the driver did not

want to work, (doc. 22-1 at ¶ 11), and there is conflicting evidence as to whether Holt had any

degree of responsibility for evaluating the drivers.  (*Compare* doc. 20-3 at 7 (21:21-22:8) (Clark's

testimony that driver evaluations were "supposed to be in conjunction" with the Transportation

Manager) *with* (doc. 20-2 at 18-19 (68:19-69:6) (Holt's testimony that he was not involved in

driver evaluations)).  Wright explicitly testified Holt did not have two direct reports.  (Doc. 22-2

at 11 (43:17-18)).  Considering the evidence in the light most favorable to Holt, the evidence does

not bear out Holt's supervisory responsibilities for two or more drivers.

Finally, Holt states he lacked the authority to hire and fire.  (Doc. 21 at 25).  JCCEO

responds that "the undisputed evidentiary support for [its] Motion" shows that Holt's suggestions

and recommendations as to hiring and firing were given particular weight, which is sufficient under

the 29 C.F.R. 541.105 even if a higher-level manager had the ultimate power to hire and fire.  (Doc.

24 at 13-14).  Again, JCCEO appears to rely primarily on the Singgellos Affidavit, which, again,

largely parrots the regulation.  (*Compare* doc. 20-1 at ¶ 14 *with* 29 C.F.R. § 541.100).  Singgellos

does venture further than the regulation by stating that the Transportation Manager frequently

makes suggestions and recommendations with respect to "hiring, firing, advancement, promotion

or other changes of status of other employees in the Transportation Department . . . and at least

annually, as part of the performance review of each employee working in the Transportation

Department." (Doc. 20-1 at ¶ 14). However, there is no evidence in the record to suggest Holt ever made any recommendation at all with respect to "hiring, firing, advancement, promotion or other changes of status," and nor is there any evidence that Holt ever participated in an annual performance review. To the contrary, Holt testified he was not involved in interviewing applicants, (doc. 20-2 at 19 71:6-10)), nor in driver reviews, (id. at 18-19 (68:19-69:6)).

Factual disputes exist as to the second, third, and fourth elements of the executive exemption. JCCEO is not entitled to summary judgment as to its applicability.

## 2. Administrative Exemption

JCCEO also contends the administrative exemption applies to Holt. (Doc. 20 at 17-18). Holt argues JCCEO has waived the right to argue the FLSA's administrative exemption (which JCCEO relies on in its motion for summary judgment, (*see* doc. 19 at 17-18)) applies, as the defense was "neither pleaded nor completely disclosed in discovery." (Doc. 21 at 26-28). Holt says JCCEO did not include the defense in its answer or its interrogatory responses and has failed to amend its answer or supplement its discovery responses to include the defense. (Doc. 21 at 26).

### a. Waiver

In its answer, JCCEO's eleventh defense is that "Plaintiff was an exempt employee, per agreement of the parties, the provisions of the FLSA and/or the applicable interpretive caselaw." (Doc. 5 at 4). JCCEO claims this is sufficient to invoke the administrative exemption. (Doc. 24 at 11). However, "[u]nder Rule 8(c) of the Federal Rules of Civil Procedure, a claim of exemption is an affirmative defense that must be specifically pled or it will be deemed waived." *Sejour v. Steven Davis Farms, LLC*, 28 F. Supp. 3d 1216, 1224 (N.D. Fla. 2014). The general invocation of exemptions under the FLSA in JCCEO's answer does not meet this standard. *See*

*id.*; *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005) (a defendant's claim that a plaintiff is "not covered" under the FLSA is inadequate under Rule 8(c)).

Further, when asked through Holt's Interrogatory 1 to "[s]tate each and every legal theory and supporting fact on which Defendant relies in asserting that Plaintiff was not entitled to overtime pay under the FLSA, including, but not limited to, the specific exemption(s) on which Defendant relies," JCCEO identified only "the executive/managerial exemption, 29 U.S.C. Section 213(a)(1)." (Doc. 22-6 at 3). Although JCCEO contends its reference to the statute is sufficient because § 213(a)(1) covers both the executive and the administrative exemptions, its response is inconsistent with this characterization. JCCEO does not explain why it specifically listed the executive exemption and not the administrative exemption. Additionally, the remainder of its response discusses the requirements in 29 C.F.R. § 541.100, which is exclusively about the executive exemption, with no mention of the administrative exemption requirements contained in 29 C.F.R. § 541.200. (Doc. 22-6 at 3). JCCEO's interrogatory response does nothing to adequately identify the administrative exemption.

The question now becomes what to do with JCCEO's deficient answer and failure to supplement its discovery to include its intention to rely on the administrative exemption. The Eleventh Circuit has stated Rule 8(c) is primarily concerned with whether the plaintiff has notice that a defense will be raised at trial. *See Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988). Based on this, it has frequently held affirmative defenses are not waived when a plaintiff has notice of the affirmative defense or was not prejudiced by lack of notice. *See Proctor v. Fluor Enterprises, Inc.*, 494 F.3d 1337, 1350 (11th Cir. 2007) (collecting cases).

Here, two JCCEO employee witnesses testified specifically about the administrative exemption, and Holt's counsel questioned them extensively about it. Under questioning by Holt's

counsel at a January 18, 2018 deposition, Wright explained that he believed Holt met the administrative exemption.  (Doc. 22-2 at 11-12 (39:6-44:23)).  Holt's counsel explored this belief by going through the criteria for the administrative exemption with Wright.  (*Id*.).  Later, Holt's counsel took Clark's deposition and asked her specifically if she agreed with Wright's assessment that Holt fell into the administrative exemption.  (*Id.* at 11 (39:21-40:9)).  Holt's counsel then questioned Clark, in detail, about criteria relevant to the administrative exemption.  (*Id.* at 11-13 (40:9-45:12)).  Based on the facts that Holt has been on notice since at least January 18, 2018 that the administrative exemption was relevant to this case, that JCCEO likely intended to rely upon it, and that Holt had ample opportunity to explore the issue in discovery (which he seems to have used), Holt has not been prejudiced by JCCEO's failure to include the defense in its answer pursuant to Rule 8(c), or to supplement its interrogatory response to include the defense pursuant to Rule 26(e).  Accordingly, neither Rule 8(c) nor Rule 37 bar JCCEO from raising the defense, and the undersigned considers it below.

### b.  Applicability

The FLSA exempts employees who are "employed in a bona fide . . . administrative . . . capacity" from overtime requirements.  29 U.S.C. § 213(a)(1).  Under the governing regulations, an "employee employed in a bona fide administrative capacity" means an employee:

> (1) Compensated on a salary or fee basis pursuant to § 541.600 [. . .];
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.  Like the executive exemption, the administrative exemption is concerned with the "actual day-to-day job activities of the [employee] . . . not the labels the [employee] or

the [employer] place on those duties  *Mutch v. PGA Tour, Inc.*, No. 3:04-CV-97J12TEM, 2006 WL 510068, at *4 (M.D. Fla. Mar. 2, 2006) (citing *Schaefer v. Indiana Michigan Power Co.*, 358 F.3d 394, 400 (6th Cir. 2004); *Reich v. Chicago Title Insurance Company*, 853 F. Supp. 1325, 1330-31 (D. Kan. 1994)).

As stated above, JCCEO's motion only recites the criteria for the administrative exemption and states it applies.  (*See* doc. 19 at 17-18).  Unlike the executive exemption, though, JCCEO does not expand on the administrative exemption at all in its reply brief.  (*See* doc. 24 at 14-18). Instead, it simply argues it has not waived the exemption, and that it has "more than adequately demonstrated the factual support for the application of the administrative exemption."  (*Id.* at 16). It spends the remainder of its reply brief attacking Holt's "self-serving claims."[13]  (*Id.*).

Assuming JCCEO intends the Singgellos Affidavit to supply its basis for the administrative exemption's application (although it never actually states it does), its argument suffers from the same flaws as its argument for the executive exemption.  The Singgellos Affidavit spends paragraphs mechanically reciting the regulatory criteria for the exemption, (*compare* doc. 20-1 at ¶¶ 5, 7-8 *with* 29 C.F.R. § 541.200), portions of the regulation defining what it means to be "directly related to management or general business operations, (*compare* doc. 20-1 at ¶ 6 *with* 29 C.F.R. § 541.201(b)), and the regulation defining "discretion and independent judgment," (*compare* doc. 20-1 at ¶¶ 9-10 *with* 29 C.F.R. § 541.202(a) & (b)).  Again, it never connects these legal conclusions to the actual duties Holt performed.  *See Wagner*, 139 F. App'x at 132.

---

[13] As discussed above, Holt's testimony is appropriate summary judgment evidence regardless of whether it is self-serving.  *See supra*, Section II.B.

25

This would be enough to conclude that JCCEO has not met its burden to establish the administrative exemption applies and deny summary judgment, but there are also clear factual issues precluding summary judgment on the exemption — especially construing the exemption narrowly against the employer, as the court must, *Pioch*, 825 F.3d at 1268.   Although the Singgellos Affidavit states Holt exercised "discretion and independent judgment," (doc. 201- at ¶ 8), the only testimony related to Holt's discretion establishes he had little.   Clark testified Holt had "not a lot" of ability to exercise discretion, (doc. 20-3 at 12-13 (44:3-45:12)), and Wright could only describe Holt's discretion to keep the JCCEO fleet "up to date on all the maintenance, all safety, all required items, all of those sorts of things," (doc. 22-2 at 12 (41:4-44:23)).   Although Holt could authorize small repairs, his limit appears to have been a maximum of $1,000.   (Doc. 20-2 at 16-17 (60:20-61:16), 18 (65:13-66:2)).   This does not support Holt had the ability to "commit the employer in matters that have significant financial impact," 29 C.F.R. § 541.202, as Singgellos recites, (doc. 20-1 at ¶ 10).   The evidence reflects, at a minimum, a healthy factual dispute as to the discretion Holt employed.   Accordingly, JCCEO is not entitled to summary judgment as to the administrative exemption.

### B. JCCEO's Knowledge of FLSA Violations

An FLSA plaintiff claiming unpaid overtime is required to show (1) he worked overtime without compensation and (2) his employer knew or should have known of the overtime work. *Allen*, 495 F.3d at 1314–15.   "An employer is said to have constructive knowledge of its employee's overtime work when it has reason to believe that its employee is working beyond his shift." *Id.* at 1319 (citing 29 C.F.R. § 785.11).   When an employer's supervisors encourage artificially low reporting or squelch truthful reports of overtime worked, knowledge of overtime

work may be imputed to the employer.  *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) (citation omitted); *Allen*, 495 F.3d at 1319.

JCCEO's entire argument is a single paragraph in which it states, in conclusory fashion and without pointing to anything specific in the record, that its "evidentiary submittal affirmatively establishes that Holt did not report any alleged overtime work, for which he was not compensated, and that JCCEO did not know of any such alleged overtime."  (Doc. 19 at 15).  It further states "no legitimate evidence" supports JCCEO should have known of the alleged overtime.[14]  (*Id*.).

Taken in the light most favorable to Holt, there is evidence from which a jury could conclude JCCEO knew of Holt's uncompensated overtime.  First, Holt's supervisor, Woods, testified that he believed Holt came into work at 6:00 to 6:30 a.m. and left at 3:00 to 3:30 p.m. — at a minimum, a nine-hour workday.  (Doc. 20-4 at 8 (28:7-15)).  This raises a genuine issue of material fact as to Woods' knowledge Holt was working overtime without pay, and thus as to JCCEO's actual knowledge of Holt's overtime.  Second, the evidence indicates Holt's supervisor told him he could not ask to receive overtime pay for overtime that had not been pre-approved and should not record overtime hours on his timesheets unless they had been preapproved.  (Doc. 20-2 at 35-36 (136:1-138:9)).  A jury could conclude that this was JCCEO's effort to discourage reporting legitimate overtime and impute knowledge of Holt's overtime worked to JCCEO even without Woods' actual knowledge.

---

[14] JCCEO uses the terms "legitimate evidence" or "legitimate facts" in several portions of its briefs.  (*See, e.g.,* doc. 19 at 15; doc. 24 at 9).  To the extent this phrasing is intended to incorporate JCCEO's evidentiary objections, they have been overruled, as discussed above.  *See supra*, Sections II.A & II.B.

27

In its reply, JCCEO attempts to distinguish two cases cited by Holt (indirectly, as they are discussed within Holt's blockquote of *Bailey*, 776 F.3d at 802, (*see* doc. 21 at 2-23)) to support imputed knowledge.  (Doc. 24 at 8-9).  In the first case, *Brennan v. Gen. Motors Acceptance Corp.*, supervisors exerted "pressure" on their inferiors to understate their overtime.  482 F.2d 825, 827 (5th Cir. 1973).  In the second, *Allen*, an employee supervisor "was aware that [the employee] was working overtime hours" and was also "aware that [the employee] had been told that she could not be paid overtime."  495 F.3d at 1318.  Although JCCEO states "[t]here are no legitimate facts in this case to support the type of evidence relied upon" by the *Allen* and *Brennan* courts, as discussed above, there is evidence that supports both the inference that Holt's former supervisor pressured him not to report overtime (the situation in *Brennan*) and that Woods was aware Holt was working more than eight hours per day (the situation in *Allen*).  JCCEO also cites *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324 (5th Cir. 1972), to support that Holt's deliberate underreporting of his hours resulted in his lack of overtime pay.  (Doc. 24 at 9-10).  In that case, the court found no evidence to support either that the employer required the employee to underreport hours or "in any manner encouraged workers to falsely report."  *Brumbelow*, 462 F.2d at 1327.  Despite JCCEO's contention, though, there <u>is</u> evidence in this case from which a jury could conclude a supervisor discouraged Holt from reporting unapproved overtime, and thus evidence from which it could impute knowledge to JCCEO.  Accordingly, JCCEO is not entitled to summary judgment as to its knowledge of FLSA violations.

### C. Willfulness

JCCEO contends Holt's complaint alleges only a willful violation of the FLSA, and the evidence is insufficient to support a finding of willfulness.  (Doc. 19 at 11-15).  Holt responds that whether there is an FLSA violation and whether the violation was willful are two independent

questions, but regardless there is enough evidence for a reasonable jury to answer both in the affirmative. (Doc. 21 at 18-21). In its reply, JCCEO argues an ordinary violation of the FLSA and a willful violation of the FLSA are two separate causes of action, and Holt's complaint contains only the latter. (Doc. 24 at 6-7).

It is true Holt's complaint contains multiple references to JCCEO's "willful" violations of the FLSA. (*See* doc. 1 at ¶¶ 15-17, 19-21 (alleging JCCEO "has willfully violated the FLSA" in various ways). But JCCEO cites no authority for its willful-or-nothing position. In fact, whether a violation is willful or not extends the limitations period for a plaintiff's recovery. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162 (11th Cir. 2008). If a violation is willful, a plaintiff can recover damages for violations three years prior to the date of filing; if it is not, the violation is subject to the ordinary two-year statute of limitations. *Murray v. Birmingham Bd. of Educ.*, 172 F. Supp. 3d 1225, 1239 (N.D. Ala. 2016) (citing 29 U.S.C. § 255(a)). Nothing in the case law concerning willful violations implies a plaintiff who has pleaded a willful violation is barred from any recovery at all if he merely shows an ordinary violation within the two years prior to when he filed his complaint.[15] Further, the history of the statute does not support JCCEO's reading; the willful/non-willful distinction in the FLSA comes from the Portal-to-Portal Act of 1947, in which Congress created an exception to the then-existing two-year limitations period for

---

[15] As stated above, this action was filed on April 27, 2017. (Doc. 1). Even absent willfulness, JCCEO's alleged violations of the FLSA for Holt's work as Transportation Manager necessarily fall after May 12, 2016, the date on which Holt was promoted, and thus within the two-year statute of limitations. An adverse finding as to willfulness would not mean Holt's claims are fully time-barred.

willful violations.  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-33 (1988) (discussing this development).[16]

Turning to the question of whether there is sufficient evidence of willfulness in this case to survive summary judgment, "[t]o establish that the violation of the [FLSA] was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was."  *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162–63 (11th Cir. 2008) (citing *McLaughlin*, 486 U.S. at 133).  Holt relies on "reckless disregard," defined as an employer's "failure to make adequate inquiry into whether [its] conduct is in compliance with the [FLSA]."  5 C.F.R. § 551.104.  An employer's actions are not willful if it "acts unreasonably but not recklessly in determining its legal obligation under the FLSA."  *Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306, 1324 (11th Cir. 2007).

JCCEO argues its conduct here cannot willful because (1) it had an overtime policy as set out in its employee handbook; (2) even if any employee failed to request approval for overtime, the employee was paid for overtime if he or she actually worked it; and (3) employees completed timesheets of their hours, and it is undisputed Holt completed and signed timesheets and was paid for all the time he reported.  (Doc. 19 at 14-15).   It purports to contrast this with two cases it says are illustrative.  In *Souryavong v. Lackawanna County*, 872 F.3d 122 (3d Cir. 2017), the Third Circuit affirmed a district court's decision to grant judgment as a matter of law to an employer, in

---

[16] As the Court noted in *McLaughlin*, the § 255 limitations period applies to multiple other statutes — the Equal Pay Act, the Davis-Bacon Act, the Walsh-Healey Act, and the ADEA — as well.  *McLaughlin*, 486 U.S. at 131.  It makes little sense to conclude § 255, conspicuously entitled "Statute of Limitations," bifurcates each of these statutes into separate causes of action.

part due to the plaintiffs' inability to connect an email that discussed potential labor grievances for overtime back pay to the FLSA.  It is unclear what application *Souravong* has to this case, because it is undisputed that JCCEO's employee handbook explicitly connects the issue of overtime to the FLSA.  (*See* doc. 22-3 at 3 (discussing overtime pay for non-exempt employees on a page entitled "Fair Labor Standards Act (FLSA) and Compensation)).  In the other case JCCEO cites, *Davila v. Menendez*, 717 F.3d 1179 (11th Cir. 2013), a minimum wage case, there was evidence to support that the employers were aware of hourly wage laws but did not investigate their compliance with them; that they failed to keep records of the employee's hours; that they falsified their tax returns; that they used the employee's immigration status against her; that they paid the employee in cash; and that they otherwise covered up their noncompliance with minimum wage laws.  JCCEO says this type of conduct is not present in this case, (doc. 19 at 14), but it is not necessarily due summary judgment on the issue of willfulness just because its conduct is not as egregious as another employer's.

Although in an unpublished, *per curiam* decision, the Eleventh Circuit confronted similar facts to this case in *Gilbert v. City of Miami Gardens*, 625 F. App'x 370 (11th Cir. 2015).  In *Gilbert*, the plaintiff was responsible for recording her own timesheets.  *Id.* at 371.  After several years on the job, one of her supervisors informed her that the department lacked the budget for overtime and stated she would have to seek preapproval if she needed to or was asked to work overtime.  *Id*.  Afterwards, the plaintiff often worked overtime, but stopped recording that she was working more than eight hours a day on her timesheets.  *Id*.  After a jury trial, the district court granted judgment as a matter of law to an employer, finding no reasonable jury could find a willful violation and, in the absence of willfulness, the plaintiff's claims were time-barred.  *Id.* at 371-72. The Eleventh Circuit reversed.  *Id.* at 372.  It pointed to the fact that the plaintiff had worked

overtime prior to being told to seek preapproval for overtime, but afterwards recorded exactly eight hours of work despite the fact that her job duties required her to work longer. *Id.* Further, some of the plaintiff's coworkers saw her working hours consistent with overtime. *Id.* And, despite the fact that the employer nominally allowed preapproved overtime, a jury could have believed that the direction that the plaintiff should not submit overtime "essentially trumped the former rule." *Id.* Although the jury heard facts that undermined willfulness, the court held these facts entitled the jury "to decide for itself whether the City willfully violated the FLSA." *Id*. at 373.

There is no evidence to support that Holt's job duties increased such that his superiors would have known he could not complete his work in a forty-hour week, but this case is close to the facts of *Gilbert*. Although JCCEO points out that Holt was paid for overtime he actually reported, as in *Gilbert*, a reasonable jury could find his supervisor's instruction he could not report unapproved overtime on his timesheet effectively put an end to Holt's reports of overtime. And, as in *Gilbert*, JCCEO cannot simply rely on the fact that it paid Holt for the hours he reported when its supervisor's direction arguably led Holt to underreport his hours. Consequently, there is evidence in this case from which a jury could find JCCEO's conduct was willful.

### V. Conclusion

For the reasons stated above, JCCEO's motion for summary judgment, (doc. 19), and motion to strike, (doc. 25), are **DENIED**. The parties are encouraged to discuss alternative dispute resolution, including the potential for mediation. The parties are **ORDERED** to file a joint status report by **April 1, 2019**, regarding the status of such discussion and whether they believe mediation would be beneficial to the resolution of this action.

DONE this 18th day of March, 2019.

_____

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE